IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE UNITED STATES OF AMERICA,
on the relation of Jodi Miller,

    Plaintiffs,

v.

SSM HOME CARE CORPORATION,
SSM HEALTH CARE CORPORATION,
SSM HEALTH CARE OF WISCONSIN, INC. and
HOME HEALTH UNITED, INC.,

    Defendants.

**Filed *in camera* pursuant to 31 U.S.C. sec. 3730(b)(2)**
Case No.: 12-cv-885

---

COMPLAINT FOR DAMAGES and INJUCTIVE RELIEF
UNDER THE FALSE CLAIMS ACT

*QUI TAM* ACTION FILED UNDER SEAL

---

NOW COMES THE PLAINTIFFS, THE UNITED STATES OF AMERICA, on relation of Jodi Miller, by their attorneys Gingras, Cates & Luebke, by Paul A. Kinne, and hereby states and alleges the following as her Complaint in the above referenced matter.

NATURE OF THE PROCEEDINGS

1.    This action is brought on behalf of the United States of America to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C. §§3729-3733, and on behalf of realtor Jodi Miller to claim entitlement to a portion of any recovery obtained by the United States as a *qui tam* plaintiff authorized by 31 U.S.C. §3730.

2.    Relator brings this action to impose liability upon defendants for violations of 31 U.S.C. §3729 and non-compliance with various federal regulations by submission to the United

States of certain claims for monetary reimbursement for in-home health care provided to clients/patients through the United States' Medicare programs to the extent such claims were not eligible for such payment because they did not meet the requirements for payment due to the defendants non-compliance with Medicare and other laws and regulations relating to in-home health care eligibility.

## JURISDICTION AND VENUE

3.	Jurisdiction lies in this Court pursuant to 28 U.S.C. §§1331, 1345 and 31 U.S.C. §3732(a).

4.	Venue is proper in the Federal District Court, Western District of Wisconsin *inter alia*, pursuant to 28 U.S.C. sec. 1391 because the defendants are subject to personal jurisdiction in the Western District of Wisconsin based on its systematic and continuous contacts in this district.

5.	Relator previously communicated with the Department of Justice assistant U.S. attorneys to provide information and notify them that she was intending to file this action.

## PARTIES

6.	Relator brings action on behalf of the United States of America pursuant to 31 U.S.C. sec. 3730(b)(1). The United States of America is a sovereign country whose Department of Health and Human Services pays claims submitted to the defendants through its Medicare problems for in-home health care provided by the defendants.

7.	Jodi Miller, is a citizen of the United States of America and a resident of the State of Wisconsin, residing at W1944 Mickelson Road, Fall River, Wisconsin 53932. Miller was employed with the defendants.

8. SSM Home Care Corporation is a business based in Missouri but also operating in Wisconsin. It is a member of SSM Health Care Corporation and is a co-owner of Home Health United, Inc.

9. SSM Health Care of Wisconsin, Inc. is a business operating in Wisconsin. It is owned and managed by SSM Health Care Corporation. SSM Health Care of Wisconsin, Inc. co-owns Home Health United, Inc.

10. SSM Health Care Corporation is a business based in Missouri that also operates in Wisconsin. It owns, manages and is affiliated with hospitals in Missouri, Wisconsin, Illinois and Oklahoma. SSM Health Care Corporation co-owns a share in Home Health United, Inc. (Hereinafter, "SSM Home Care of Corporation," "SSM Health Care of Wisconsin, Inc." and "SSM Health Care Corporation" will be collectively referred to as "SSM Home Care Corporation.")

11. Home Health United, Inc. (HHU) is a business operating in Wisconsin. Home Health United, Inc. is owned by both SSM Home Care Corporation, SSM Health Care Corporation and SSM Health Care of Wisconsin, Inc.

FACTUAL ALLEGATIONS

12. SSM Home Care Corporation is a home health care provider that employs health care professionals to provide home health care services to patients.

13. Through Medicare, the United States reimburses SSM Home Care Corporation for services provided to qualified beneficiaries.

14. Medicare pays bills submitted from HHU according to diagnoses assigned by codes SSM Home Care Corporation coders that reflect a patient's plan of care and the home health care services rendered.

15. SSM Home Care Corporation "coders" (via bills submitted to Medicare) made false statements with the assigned diagnoses in order to receive money from the government (Medicare) to which SSM Home Care Corporation was not entitled.

16. Miller has first-hand knowledge of the following examples of false statements (typically in the form of up-coding) made to receive money, which include:

  a. In July, 2012, SSM Home Care Corporation submitted a bill coded for a groin ulcer (case mix), Gastro Esophageal Reflux Disease (GERD) and muscle weakness when those codes were not accurate. This matter pertained to patient V.S. The doctor referral to noted "unstable balance," and the HHU physical therapist noted a rash. Instead of billing for unstable balance, SSM used a "groin ulcer" as the primary code, and added GERD to the record. Muscle weakness was also added inappropriately.

  b. In July, 2012, SSM Home Care Corporation submitted a bill coded for a knee replacement for osteoarthritis when actually a knee revision was preformed for a mechanical complication of loosening of a prosthetic knee joint. SSM Home Care Corporation also coded for GERD inappropriately. This matter dealt with patient L.K. SSM indicated an osteoarthritis case mix diagnosis when the knee replacement was completed two years prior to the then-current treatment. A knee replacement of osteoarthritis inaccurately represented the patient's health status which allowed for a case mix / higher reimbursement rate.

c. In July, 2012, SSM Home Care Corporation submitted a bill coded for problem gait, GERD and muscle weakness when it was not appropriate. This pertained to patient C.G. The primary complaint for needing home health care was right shoulder pain, with the patient refusing occupational therapy for his wrist fracture. The patient had already received physical therapy for the gait issues in the hospital / rehab.

d. In July, 2012, through its employee, Glenda Tate, submitted a bill coded for peptic ulcer disease when no treatment was provided during the patient's plan of care. This matter pertained to patient D.F. After Miller properly coded this complication, Tate instructed Miller to code for treatment of "non-healing surgical wound" since higher points are allowed with non-routine supplies. Tate also instructed the coding assignment of peptic ulcer diagnosis since it would "add points" being case mix for SSM's billing purposes.

e. In July, 2012, SSM Home Care Corporation submitted a bill coded for GERD when the patient was not taking medication for this condition. This matter pertained to patient V.D. The physician's order was for "deconditioning" due to weak muscles. Tate chose to code a primary diagnosis of Parkinson's disease, instead of muscle weakness. Records state, "Patient previously diagnosed with Parkinson's disorder has improved off meds and has now acquired ability to walk but muscles deconditioned." Tate coded for muscle weakness as number seven instead

        of primary. GERD was coded in the top six, but the patient took no medication for GERD nor was GERD part of the plan of care.

f.     In July, 2012, SSM Home Care Corporation submitted bills for asthma and GERD for a patient who was referred to home health for wound care only. This pertained to patient B.K. B.K. suffered from a pressure ulcer on the buttocks. The proper way to code for this condition per the official ICD-9 Coding Guidelines was to list the pressure ulcer site first, then the stage. By listing the stage as primary, it resulted in a higher-then-allowed reimbursement rate due to the stage diagnosis being case mix. Additionally, B.K. was quadriplegic. Medicare already paid for private duty nursing. SSM was only treating B.K. for specific wound care. There was no treatment for GERD or asthma.

g.     In July, 2012, SSM Home Care Corporation submitted false bills associated with a lung cancer patient "s/p RML lobectomy 10.12.2011, s/p chemotherapy and radiation 1.2012, complicated by radiation pneumonitis." This matter pertained to patient B.W. SSM inaccurately coded this patient's resumption of care ("inpatient 6.6.12-6.19.12") with a diagnosis of "lung cancer" and COPD with acute bronchitis, both case mix. In coding the resumption of care inaccurately, the recertification diagnosis for the patient was submitted to Medicare and resulted in a higher-than-allowed reimbursement rate. B.W.'s hospitalization in June, 2012, was for treatment of hemoptysis, etiology most likely being multifactorial. There was no indication of relapse of lung cancer.

6

h. SSM coded patient I.T. with acute posthemorrhagic anemia when it was a condition that had been resolved. The patient was hospitalized with a hip fracture and moved to a swing bed prior to the start of home care health services. By coding and billing a resolved case-mix diagnosis on this patient's profile it prompted an inappropriate higher reimbursement rate.

i. SSM coded patient W.M. for a procedure with a diagnostic code reflecting a complication due to a procedure done on the wrong side of the body (999.89). This patient was referred for home health services for treatment of gout. SSM used the diagnosis of 998.89 to represent non-healing humeral fracture, a difficulty in walking diagnosis. The diagnosis of gout was never coded for this patient's plan of care.

j. SSM coded patient I.V. with a skin cancer diagnosis. Skin cancer diagnoses are case mix, allowing for a higher payment from Medicare. However, for this patient, skin cancer was a historical diagnosis (from 2008), and not part of the current plan of care. Billing for skin cancer treatment is an example of fraud. In addition, muscle weakness was also coded. The plan of care for the patient was after-care following bypass surgery.

k. Tate changed a diagnostic code for patient R.S. to reflect a multiple therapy based episode of V57.89 as the primary code. Skilled nursing was also involved in this patient's care for end-stage renal disease. Guidelines for home health coding state that if skilled nursing is also involved in a patient's plan of care, therapy based on V57.x cannot be the primary code.

>By coding therapy as primary, SSM sought greater reimbursement than that to which it was entitled.

17. In November, 2011, Miller began her employment with Home Health United, Inc.

18. On or about July 2, 2012, Miller transferred employment to SSM Home Care Corporation, where she was to assist the company with coding. She was hired as a medical coder.

19. Miller coded HHU patients under the direction of SSM Home Care Corporation employee Tate.  Other SSM Home Care Corporation employees were also coding for HHU patients.

20. Once the SSM Home Care Corporation employees coded for the HHU patients, HHU submitted the bills to Medicare for payment.

21. While at SSM Home Care Corporation, Miller discovered Medicare fraud, including but not limited to the examples set forth earlier in this complaint.

22. Tate instructed Miller to automatically code for muscle weakness whenever a patient was released from the hospital.  Tate gave Miller examples:  Miller was supposed to code for muscle weakness even when a patient was hospitalized for pneumonia or a urinary tract infection.

23. Miller brought this fraud to the attention of SSM Home Care Corporation, but no action was taken to rectify the fraud.

24. SSM Home Care Corporation knew the statements / improperly coded bills were false.

25. Upon information and belief, SSM Home Care Corporation made false claims for payment from Medicare for years prior to Miller's discovery.

## CAUSE OF ACTION – VIOLATION OF THE FALSE CLAIMS ACT

26. Plaintiffs hereby incorporates 1 - 25 as if set forth fully herein

27. By engaging in the foregoing acts, SSM Home Care Corporation, SSM Health Care Corporation, SSM Health Care of Wisconsin, Inc. and Home Health United, Inc. violated the False Claims Act.

28. This violation has cost the United States of America significant sums in wrongly paid claims.

WHEREFORE, the United States of America is entitled to damages from the defendants in accordance with the provisions of 31 U.S.C. §§3729-3733, and Plaintiff/Relator requests that judgment be entered against defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.;*

b. Defendants pay an amount equal to three times the amount of damages the United States of American has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d. Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730 (d); and

e. The United States and Plaintiff/Realtor be granted all such other relief as the Court deems just and proper.

## JURY DEMAND

The plaintiff respectfully requests that this matter be tried before a jury of six (6) competent persons.

Dated this 6th of December, 2012.            **s/ Paul A. Kinne**
Attorney Paul A. Kinne
State Bar No. 1021493
Gingras, Cates & Luebke
8150 Excelsior Drive
Madison, WI 53717
Telephone: 608-833-2632
Fax: 608-833-2874
kinne@gcllawyers.com