IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA
ex rel. JODI MILLER,

                     Plaintiff,

         v.

SSM HEALTH CARE CORPORATION
and HOME HEALTH UNITED, INC.,

                  Defendants.

OPINION AND ORDER

12-cv-885-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Jodi Miller brought this case under the False Claims Act, 31 U.S.C. § 3729(a)(1), on behalf of the United States. (Because the United States has declined to intervene in the lawsuit, dkt. ##9 and 10, I will refer to Miller simply as "plaintiff" for the remainder of this order.)  In an order dated February 18, 2014, dkt. #51, I granted motions to dismiss filed by defendants SSM Health Care Corporation, SSM Health Care of Wisconsin, Inc., dkt. #42, and Home Health United, Inc. on the ground that plaintiff had not satisfied the pleading requirements of Fed. R. Civ. P. 9.  As permitted by the court, plaintiff has filed a proposed amended complaint in an attempt to cure the deficiencies by adding more facts and dismissing her claims as to defendant SSM Health Care of Wisconsin.  Dkt. #52.  In addition, plaintiff added a new claim for "conspiracy to violate the False Claims Act."  Id.

      The gist of plaintiff's claims is that defendants defrauded the federal government by

submitting false claims for reimbursement to Medicare. Plaintiff alleges that defendant Home Health United provides in-home healthcare to Medicare patients and that defendant SSM Health Care co-owns Home Health United with another company. When Home Health United seeks reimbursement from Medicare, employees of SSM "code" each service that was provided to match the condition that was treated. The diagnostic code listed may affect the amount of reimbursement. Plaintiff contends that defendants intentionally miscoded their services so that they could obtain larger reimbursements from Medicare.

The remaining two defendants have filed renewed motions to dismiss, dkt. ##54 and 56, arguing again that plaintiff's complaint does not satisfy federal pleading requirements. I conclude that plaintiff's second amended complaint is minimally adequate to satisfy Rule 9 with respect to plaintiff's claims that defendants made false statements and submitted false claims to the federal government, in violation of 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B). However, I am dismissing plaintiff's conspiracy claim under § 3729(a)(1)(C) because she forfeited this claim by failing to develop an argument in support of it.


OPINION

Plaintiff is asserting claims under 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B), which prohibit a person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim [to the federal government] for payment or approval" and "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." Plaintiff does not cite a statutory provision for her conspiracy

claim, but 31 U.S.C. § 3729(a)(1)(C) prohibits anyone from "conspir[ing] to commit a violation" of § 3729(a)(1)(A) or § 3729(a)(1)(B).  Because these claims require proof of fraud, the heightened pleading requirements of Fed. R. Civ. P. 9 apply.  Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007).

In many cases, the Court of Appeals for the Seventh Circuit has described the Rule 9 requirements as "the who, what, when, where, and how: the first paragraph of any newspaper story."  E.g., DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).  See also General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997) (Rule 9 requires "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.").  On the other hand, the court has cautioned not to "take an overly rigid view of the formulation" because "what gets included in that first paragraph . . . may vary on the facts of a given case," particularly if some of the facts are outside the plaintiff's control.  Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011).  Ultimately, the question is whether the plaintiff has pleaded enough details to show that she has conducted an adequate pretrial investigation and is not simply using the lawsuit to force a settlement for a claim without merit.  Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co., 412 F.3d 745, 748-49 (7th Cir. 2005).

A.  <u>Repleaded Claims against SSM Health Care</u>

SSM Health Care does not raise any specific arguments regarding the difference between a "false claim" under § 3729(a)(1)(A) and a "false statement" under § 3729(a)(1)(B).   From this, I assume that it assumes, along with plaintiff, that plaintiff's claims against SSM Health Care under § 3729(a)(1)(A) and § 3729(a)(1)(B) rise and fall together.  Accordingly, I do not consider that issue.

To support her claims, plaintiff relies primarily on what she says is first hand knowledge that she obtained while working as a "coder" for defendant SSM in July 2012. In paragraphs 36a through 36g of her second amended complaint, plaintiff lists seven instances in which coders for SSM allegedly coded services incorrectly to obtain a larger reimbursement.  For example in paragraph 36a, plaintiff alleges the following:

> SSM Coder Diane Sartin submitted a bill coded for a groin ulcer (case mix), Gastro Esophageal Reflux Disease (GERD) and muscle weakness when those codes were not accurate. The matter was coded for a "chronic ulcer of the unspecified site" (DX 707.9), when it should have been coded as 695.89 (intertrigo) or 782.1 (rash). The bill was coded by SSM Coder Sartin on July 13, 2012, and locked by a HHU nurse on July 16, 2012. This matter pertained to patient V.S. The doctor referral noted "unstable balance," and the HHU physical therapist noted a rash. SSM also made the false statement to Medicare that "groin ulcer" was the treatment under the primary billing code when it was not the treatment that should have truthfully been listed under the primary code. (The code fraudulently used by SSM created an improper "case mix" which meant greater payment from Medicare). SSM also made the false statement to Medicare that V.S. received treatment for "muscle weakness" when she did not receive such treatment.  SSM should have billed for "unstable balance."

In addition, plaintiff says that she personally received instructions from her supervisor to code health conditions incorrectly.  Sec. Am. Cpt. ¶ 48, dkt. #52.

4

In the February 18, 2014 order, I dismissed these claims because plaintiff did not allege any facts from which it could be inferred that defendants submitted the claims at issue to Medicare rather than to a private insurer.  United States ex rel. Crews v. NCS Healthcare of Illinois, Inc., 460 F.3d 853, 857-58 (7th Cir. 2006) (affirming dismissal of claim under False Claims Act, noting that "it is entirely possible that all returned drugs were from non-Medicaid patients; there is no evidence to the contrary").  In her second amended complaint, plaintiff addresses this problem by alleging that each of the patients identified in paragraph 36 was over the age of 65 and that, in 2009, more than 93 percent of Americans in that age group were covered by Medicare.  Sec. Am. Cpt. ¶¶ 53-54, dkt. #52 (citing www.Aoa.gov/aoaroot/aging_statistics/profile/2010/docs/2010profile.pdf).  Defendant SSM's response to this is that plaintiff's statistics are dated, but that argument is not persuasive because SSM does not identify any reason to believe that the statistics should have changed over the last five years.  If I accept plaintiffs' allegations as true, as I must, then it is reasonable to infer that most of the instances of miscoding alleged in plaintiff's complaint involved Medicare patients.

Defendant SSM also argues that plaintiff's claims must be dismissed because she does not identify any particular instances in which the miscoded claims actually were submitted for payment.  However, I agree with plaintiff that this argument is defeated by United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009), in which the court rejected the argument that Rule 9 requires the relator to provide evidence of a "specific request for payment" in the complaint:

> The district court held that, unless [the relator] has at least one of
> [defendant's] billing packages [to the federal government], he lacks the
> required particularity. Since a relator is unlikely to have those documents
> unless he works in the defendant's accounting department, the district court's
> ruling takes a big bite out of qui tam litigation. We don't think it essential for
> a relator to produce the invoices (and accompanying representations) at the
> outset of the suit. True, it is essential to show a false statement. But much
> knowledge is inferential—people are convicted beyond a reasonable doubt of
> conspiracy without a written contract to commit a future crime—and the
> inference that [the relator] proposes is a plausible one.

The same is true in this case. Defendant SSM identifies no reason to believe that it would code a diagnosis one way and then change the code at the last minute before submitting the claim to the government. SSM does not suggest that it conducted any additional reviews of its coding after the events described by plaintiff in the complaint. Thus, even without specific evidence of a particular false claim submitted to Medicare, it is reasonable to infer from plaintiff's specific allegations of false coding that SSM made false statements and submitted false claims. Accordingly, I am denying SSM's motion to dismiss as it relates to plaintiff's claims under § 3729(a)(1)(A) and § 3729(a)(1)(B).


B. Repleaded Claims against Home Health United

In the February 18, 2014 order, I dismissed plaintiff's claims against defendant Home Health United because plaintiff failed to allege that Home Health United made any false "statements" in violation of § 3729(a)(1)(A) or "knowingly" made any false statements or claims in violation of either § 3729(a)(1)(A) or § 3729(a)(1)(B). In her brief, plaintiff cites several paragraphs from her second amended complaint that she says fix the problem. Although I believe the question is a close one, I conclude that the new allegations are

minimally sufficient to satisfy Rule 9.

With respect to false statements, plaintiff alleges that as a general rule, final determinations on how treatment should be coded are made by nursing staff from Home Health United when they "lock" the code entered by SSM.  Sec. Am. Cpt. ¶¶ 20, dkt. #52. This includes six of the seven specific instances of false coding that plaintiff discusses in her complaint.  Id. at ¶¶ 36b-g.   Thus, it is reasonable to infer at this stage that Home Health United  "cause[d] [false statements] to be made" to the federal government by approving the codes, knowing that the statements were false, in violation of § 3729(a)(1)(B).  With respect to false claims, plaintiff alleges that it is Home Health United that submits the claims to Medicare.  Sec. Am. Cpt. ¶¶ 18-20, dkt. #52.  Again, because it was Home Health United's nursing staff who approved the codes, it is reasonable to infer that Home Health United knew that it was submitting false claims.   Tricontinental, 475 F.3d at 833 ("Th[e] heightened pleading requirement does not extend to 'states of mind' which 'may be pleaded generally' under Rule 9(b).").

## C.  Conspiracy Claim

"[G]eneral civil conspiracy principles apply" to conspiracy claims brought under  the False Claims Act.  United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 546 n.3 (7th Cir. 1999).  Relying on these principles, defendants raise two arguments for dismissing plaintiff's conspiracy claim.

First, defendants say that  plaintiff did not include any allegations about the existence

of an agreement between defendants.  Clark v. Henninger, 221 F.3d 1338 (7th Cir. 2000) ("A conspiracy is an agreement, and even with notice pleading, a complaint must give some indication of when an agreement was formed and what its terms were.").  See also United States ex rel. Walner v. NorthShore University Healthsystem, 660 F. Supp. 2d 891, 895-96 (N.D. Ill. 2009) ("To state a claim [for conspiracy under the False Claims Act, the plaintiff] must allege two elements: 1) that the Defendants had an agreement, combination, or conspiracy to defraud the government by getting a false or fraudulent claim allowed or paid; and 2) that the Defendants did so for the purpose of obtaining or aiding to obtain payment from the government for approval of a claim against the government."); Goldberg v. Rush University Medical Center, 929 F. Supp. 2d 807, 825 (N.D. Ill. 2013) (conclusory allegations of agreement are not sufficient for False Claims Act conspiracy claim).

Second, defendants say that, under the intracorporate conspiracy doctrine, defendant SSM cannot conspire with a company that it owns.  United States ex rel. Chilcott v. KBR, Inc., 09-CV-4018, 2013 WL 5781660 (C.D. Ill. Oct. 25, 2013) ("[T]he intracorporate conspiracy doctrine bars FCA conspiracy claims where all the alleged conspirators are either employees or wholly-owned subsidiaries of the same corporation."); United States v. Gwinn, No. 5:06-cv-00267, 2008 WL 867927, at *24-25 (S.D.W.Va. Mar. 31, 2008) ("[T]he Court holds that the intracorporate conspiracy doctrine applies to conspiracy claims against agents of a corporation brought under the False Claims Act."); United States ex rel. DRC, Inc. v. Custer Battles, LLC, 376 F. Supp. 2d 617, 651-52 (E.D. Va. 2005) (applying intracorporate conspiracy doctrine to False Claims Act); United States ex rel. Fago v. M & T Mortgage

8

Corp., 518 F. Supp. 2d 108, 117-18 (D.D.C. 2007) (same); United States ex rel. Fent v. L-3 Communications Aero Tech LLC, No. 05-cv-0265-CVE-SAJ, 2007 WL 3283689 (N.D.Okla. Nov. 2, 2007) (same).

Plaintiff does not respond meaningfully to either of these arguments.  In her brief, she ignores the question whether she alleged the existence of an agreement between the two defendants.  Her only response to defendants' argument about the intracorporate conspiracy doctrine is that the Court of Appeals for the Seventh Circuit has not yet decided whether the doctrine should apply to claims under the False Claims Act.  However, plaintiff does not deny that the doctrine applies generally to conspiracy claims, e.g., Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 777 (1984) (anti-trust conspiracies); Hartman v. Board of Trustees of Community College District No. 508, Cook County Illinois, 4 F.3d 465, 469 (7th Cir. 1993) (conspiracies to violate civil rights), and she does not identify any reason why the doctrine would not apply to the False Claims Act.  As I told plaintiff in the February 18 order, "[i]f [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."  Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1042 (7th Cir. 1999). See also County of McHenry v. Insurance Co. of the West, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (internal quotations omitted).  Because defendants have given plausible reasons for dismissing plaintiff's conspiracy claim and plaintiff has not refuted these reasons, plaintiff has forfeited

9

this claim.

ORDER

IT IS ORDERED that the motions to dismiss filed by defendants SSM Health Care Corporation, dkt. #56, and Home Health United, Inc., dkt. #54, are GRANTED with respect plaintiff Jodi Miller's claim under 29 U.S.C. § 3729(a)(1)(C) and the motions are DENIED with respect to plaintiff's claims under 29 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B).

Entered this 19th day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

10